UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

OLIVER J. BRANCH,

Plaintiff,

v.

MINNESOTA DEPARTMENT OF CORRECTIONS, Warden LOU STENDER, Case Manager HARRIET MARETTE, Discipline Supervisor DIANA LIND, Sgt. PAUL SCHNIEDER, and Hearing Officer JOHN KUESEL,

Defendants.

CIVIL NO. 00-2415 (JRT/JMM)

REPORT AND RECOMMENDATION

Plaintiff, a Minnesota prison inmate, has filed a Complaint seeking relief under 42 U.S.C. § 1983. (Docket No. 1.) Plaintiff did not pay the $150 filing fee for this action, but instead filed an application seeking leave to proceed in forma pauperis, ("IFP"). (Docket No. 2.) The matter is presently before the Court for two purposes: (1) to determine whether Plaintiff should be granted IFP status, and (2) to screen Plaintiff's pleading pursuant to 28 U.S.C. § 1915A(a). For the reasons discussed below, it will be recommended that Plaintiff's IFP application be denied, and that this action be summarily dismissed pursuant to § 1915A(b).

**I. BACKGROUND**

Plaintiff is incarcerated at the Minnesota Correctional Facility in Moose Lake, Minnesota, ("MCF-ML"). He was sentenced to prison in 1989, after being convicted of second degree murder. See State v. Branch, No. C0-89-2293, (Minn.App. 1990), 1990 WL 157482, (rev. denied Dec. 17, 1990) (unpublished opinion).

FILED NOV 20 2000
FRANCIS E. DOSAL, CLERK

On August 14, 2000, Defendant Harriet Marrette, a case manager at MCF-ML, directed Plaintiff to sign a consent form that would allow a blood sample to be taken from him. The blood sample was sought pursuant to Minn.Stat. § 609.117, subd. 2., which requires the Minnesota Commissioner of Corrections to obtain "a biological specimen for the purpose of DNA analysis" from prisoners who have been convicted of certain crimes, including second degree murder.[1]

Plaintiff refused to sign the blood sample consent form presented by Defendant Marrette. As a result, he was charged with violating prison disciplinary rules by "disobeying a direct order." A hearing on the matter was conducted by Defendants

---

[1] The subdivision of the statutes that requires the Commissioner of Corrections to obtain DNA specimens from convicted murderers, § 609.117 subd. 2, provides as follows:

> "The commissioner of corrections or local corrections authority shall order a person to provide a biological specimen for the purpose of DNA analysis before completion of the person's term of imprisonment when the person has not provided a biological specimen for the purpose of DNA analysis and the person:
>
> (1) was convicted of violating or attempting to violate any of the following or initially charged with violating one of the following sections and convicted of another offense arising out of the same set of circumstances:
>
> > (i) murder under section 609.185, 609.19, or 609.195;...."

This statute was previously numbered § 609.3461. Amendments to the statute, which went into effect on July 1, 2000, caused the statute to be assigned its present statute number – § 609.117. Those amendments also expanded the list of crimes that are covered by the DNA specimen requirement. Before the statute was amended, it applied primarily to sex crimes; but it now covers other violent crimes as well, including second degree murder.

Diana Lind, Paul Schnieder and John Kuesel, and Plaintiff was found guilty as charged. As punishment for his offense, he spent 45 days in segregated confinement and forfeited seven days of good time credit.

Plaintiff is now attempting to sue Defendants Marette, Lind, Schneider and Kuesel, for allegedly violating his federal constitutional rights. He also is attempting to sue the Warden at MCF-ML, Defendant Lou Stender, for failing to properly supervise the other Defendants, and for failing to rectify their alleged misconduct. Plaintiff is asking the Court to enter an order that would prevent Defendants from attempting to enforce the DNA specimen statute. He also seeks restoration of his lost good time credit, and monetary damages in the sum of "$100,000 or more" to compensate him for the alleged violations of his federal constitutional rights.

## II. DISCUSSION

Because Plaintiff is a prisoner who is seeking redress from government employees, his pleading is subject to preliminary "screening" pursuant to 28 U.S.C. § 1915A. That statute, which is part of the Prison Litigation Reform Act of 1995, ("the PLRA"), requires federal courts to screen the pleadings in every civil action brought by a prisoner against governmental entities and/or employees "before docketing, if feasible or, in any event, as soon as practicable after docketing." 28 U.S.C. § 1915A(a). The Court must determine which aspects of the pleading are actionable and should be allowed to proceed. If the pleading fails to state a legally cognizable claim, the action must be dismissed. 28 U.S.C. § 1915A(b)(1).

In this case, it is not clear whether Plaintiff is claiming that Defendants violated his constitutional rights by attempting to enforce the DNA specimen statute, or by disciplining him, without due process, when he refused to sign the DNA consent form. The Court concludes, however, that neither of those claims is viable; and it will therefore be recommended that this action be summarily dismissed, in its entirety, pursuant to § 1915A(b).

A. Due Process Claim

Plaintiff cannot challenge his disciplinary proceedings on due process grounds, for two reasons. First, he was not entitled to due process, because he was not deprived of a constitutionally protected liberty interest; and second, even if he was deprived of a protected interest, it clearly appears that he was, in fact, afforded due process.

To maintain an actionable Fourteenth Amendment due process claim, a prisoner must allege, (and ultimately prove), that he has been deprived of some constitutionally protected interest. Ragan v. Lynch, 113 F.3d 875, 876 (8th Cir. 1997) ("[a] due process claim is cognizable only if there is a recognized liberty or property interest at stake"). The only possible interests at issue in this case appear to be Plaintiff's interest in remaining in the general prison population, (as opposed to segregated confinement), and his interest in retaining his previously earned good time credits. While those interests are undoubtedly important to Plaintiff, they do not qualify as "liberty interests" that warrant the protections of due process.

A constitutionally protected liberty interest will be found, and the protections of due process will therefore come into play, only when a prisoner has shown the type of unusual hardship or dramatic departure from ordinary prison life that is contemplated in Sandin v. Conner, 515 U.S. 472 (1995). There, the Supreme Court held that a prisoner cannot sustain a due process claim unless he can show that he suffered an "atypical and significant hardship... in relation to the ordinary incidents of prison life." Id. at 484. In Moorman v. Thalacker, 83 F.3d 970, 972 (8th Cir. 1996), our Court of Appeals interpreted Sandin to mean that prisoner due process rights are implicated only when there have been "deprivations which work such major disruptions in a prisoner's environment and life that they present dramatic departures from the basic conditions and ordinary incidents of prison sentences." (Emphasis added.)

Here, Plaintiff has not pleaded an actionable due process claim because he has presented no factual allegations suggesting that he has been subjected to the type of severe hardship that Sandin requires. Again, the only "hardships" that Plaintiff has pointed to are (1) his assignment to segregated confinement, and (2) a loss of good time credits. Neither of these purported "hardships," however, constitutes the type of dramatic departure from the ordinary conditions of prison life that was contemplated by the Supreme Court in Sandin.

**(i) Segregated confinement**

Sandin itself shows that a 30-day term of segregated confinement does not normally constitute the type of "atypical and significant hardship" that implicates a constitutionally protected liberty interest. In the present case, Plaintiff's term of segregated

confinement was 45 days – just fifteen days longer than the period at issue in Sandin. The Eighth Circuit has found that periods of segregated confinement much longer than 45 days do not constitute an atypical and unusual hardship giving rise to a constitutionally protected liberty interest. Howard v. Collins, No. 97-1642 (8th Cir. 1997), 1997 WL 710314 (eight month stint in "ad seg" would not support due process claim); Driscoll v. Youngman, No. 95-4037 (8th Cir. 1997), 1997 WL 581072 (135 days in disciplinary and administrative segregation would not support due process claim).[2] Case law from other jurisdictions suggests that segregated confinement for as long as a full year will not support an actionable due process claim. See Wilson v. Harper, 949 F.Supp. 714, 723 (S.D.Iowa 1996) (eleven months in "administrative segregation-type conditions" did not constitute the type of hardship that would support a due process claim); Stone-Bey v. Barnes, 913 F.Supp. 1226, 1233-34 (N.D.Ind. 1996) (one year in segregated confinement does not implicate a protected liberty interest), vacated on other grounds, 120 F.3d 718 (7th Cir. 1997); Marino v. Klages, 973 F.Supp. 275, 278 (N.D.N.Y. 1997)(noting that "district courts in the Second Circuit have generally found that any SHU [segregated housing unit] confinement under a year in time is not an atypical or significant hardship on prisoners").

Based on Sandin and the relevant case law following it, the Court concludes that Plaintiff's 45-day term of segregated confinement does not constitute the type of hardship that would implicate a protected liberty interest. It follows that Plaintiff was not

---

[2] Although Howard and Driscoll are unpublished opinions, they can properly be relied upon as precedential case law in actions decided within the Eighth Circuit. Anastasoff v. U.S., 223 F.3d 898 (8th Cir. 2000).

entitled to the procedural protections of due process before being assigned to segregated confinement.

To the extent that Plaintiff's claims are based on a loss of good time credits, it is unnecessary to decide whether he suffered an actionable hardship, because such claims are barred in any event by the Supreme Court's decision in Heck v. Humphrey, 512 U.S. 477 (1994). There, the Court reiterated that a prisoner cannot challenge the fact or duration of his incarceration in a civil rights action. Habeas corpus is the exclusive federal remedy for a prisoner who is challenging the validity of his conviction or the length of his sentence. Id. at 481, citing Preiser v. Rodriguez, 411 U.S. 475, 488-90 (1973). Thus, even when a prisoner-plaintiff demands only money damages, he cannot bring a civil rights action that would effectively "call into question the lawfulness of [his] conviction or confinement." Heck, 512 U.S. at 483.

In this case, it is readily apparent that a judgment for Plaintiff on his good time credit claim would necessarily imply the invalidity of his sentence. That is the very essence of the claim; he is contending that his sentence has been unlawfully extended by the number of days of good time credit lost to him as a result of the allegedly unconstitutional disciplinary sanctions imposed against him. Indeed, Plaintiff has expressly asked the Court to enter an order that would restore the good time credits he has lost, which would, in effect, expedite his release from prison. According to Heck, however, the length of Plaintiff's sentence is a subject that cannot be considered in a federal civil rights action, unless Plaintiff has already established in a proper forum -- i.e., a state or federal post-conviction proceeding -- that his release date should be moved up.

He must successfully demonstrate, in a state or federal habeas corpus action, that his sentence was wrongly extended before he can recover damages arising in connection with the disciplinary proceedings that caused such extension. Because this pre-condition has not been met, Plaintiff's good time credit claim is not actionable at this time, (if at all).

Furthermore, even if Plaintiff was deprived of a protected liberty interest, his Complaint clearly shows that he was, in fact, afforded due process. Plaintiff was given written notice of the charge against him, a formal hearing on the charge was conducted, he was given an opportunity to appear at the hearing and present a defense, and he was given a written explanation of the outcome of the proceedings. See Wolff v. McDonnell, 418 U.S. 539, 563-66 (1974) (explaining minimum requirements of due process in the context of prison disciplinary proceedings). While Plaintiff obviously is disappointed and dissatisfied with the outcome of the disciplinary proceedings, he has not identified any procedural deficiency in those proceedings that could be viewed as a denial of due process.

B. Constitutionality of DNA Specimen Requirement

If Plaintiff is claiming that Minn.Stat. § 609.117 is unconstitutional, that claim must also be rejected. The constitutionality of Minnesota's DNA specimen statute has been challenged on several grounds in previous state and federal cases, and each such challenge has been unsuccessful. Kruger v. Erickson, 875 F.Supp. 583 (D.Minn. 1995), aff'd on other grounds, 77 F.3d 1071 (8th Cir. 1996); Holscher v. Erickson, No. 93-4135 (8th Cir. 1994), 1994 WL 464360 (unpublished opinion); State v. McBride, No. C7-98-1374

(Minn.App. 1999), 1999 WL 185175 (unpublished opinion).[3] Plaintiff's Complaint does not raise any new constitutional argument that has not been previously considered and rejected by the courts.

Our rejection of Plaintiff's constitutional challenge to § 609.117 rests primarily on the Holscher case, a § 1983 action brought by a Minnesota prisoner against the Minnesota Commissioner of Corrections. Holscher v. Pung, No. 4-93-18 (D.Minn. 1993). The prisoner in that case, Glen Holscher, claimed that Minnesota's compulsory DNA specimen statute was unconstitutional, and that he could not be required to give a blood sample pursuant to that statute. The State of Minnesota filed a motion asking that Holscher's complaint be dismissed pursuant to Fed. R. Civ. P. 12(b)(6), because it failed to state a claim on which relief could be granted. The magistrate judge to whom the case had been assigned wrote a comprehensive Report and Recommendation, ("R&R"), upholding the constitutionality of the DNA specimen statute. That R&R was later adopted by then Chief District Court Judge, now Circuit Court Judge, Diana Murphy. (Copies of the R&R and District Court Order in Holscher are attached hereto as Attachments A and B, respectively.)

Judge Murphy considered and rejected all of Holscher's constitutional challenges to the Minnesota law. She concluded that Holscher's Eighth Amendment rights

---

[3] Kruger, Holscher, and McBride all involved § 609.3461, the statutory predecessor to § 609.117. (See n. 1, supra.) Although the statute has been amended to expand the list of crimes that trigger the DNA specimen requirement, the essence of the statute remains unchanged. Plaintiff has not suggested, (nor can the Court independently discern), any reason to think that the constitutionality of the statute has been affected by the recent amendments that simply make the statute applicable to more crimes.

were not violated, (notwithstanding his alleged aversion to the needles used to obtain his blood sample), because there were no facts suggesting that prison officials inflicted pain on Holscher "without any penological purpose," or that their conduct resulted in any "serious deprivation of basic human needs." (See Attachment B, p. 6.) Relying on Schmerber v. California, 384 U.S. 757 (1966), Judge Murphy also concluded that Minnesota's compulsory DNA specimen statute does not violate the Fifth Amendment's self-incrimination clause. (Id., pp. 6-7.) Holscher's Fourteenth Amendment equal protection claim also was rejected. Although certain types of criminals, (i.e., those convicted of certain types of sexual and/or violent crimes), are treated differently under the statute, such disparate treatment does not violate the equal protection clause, because it is "rationally related" to a legitimate government interest. (Id. at pp. 7-8.)

Judge Murphy also specifically considered whether the DNA specimen statute violated the Constitution's ex post facto clause, since it was enacted and applied after Holscher's crime was committed. Relying primarily on Jones v. Murray, 962 F.2d 302 (4th Cir.), cert. denied, 506 U.S. 977 (1992), Judge Murphy concluded that Holscher did not have a viable ex post facto claim, because the compulsory DNA statute is not punitive or penal in nature, even though a prisoner can face the loss of good time credit if he refuses to provide a blood sample. (See Attachment B, pp. 4-5.) The rejection of Holscher's ex post facto claim is particularly significant here, because it appears that the instant Plaintiff, like Holscher, committed his crime before the DNA specimen law became applicable to his crime. (See n. 1, supra.) This Court concludes, as did Judge Murphy, that the DNA specimen statute can be applied on the basis of pre-enactment conduct, without violating

the ex post facto clause, because the statute is not a penal or punitive statute.[4]

Finally, it is important to reiterate that Judge Murphy's decision in Holscher was affirmed by the Eighth Circuit Court of Appeals. Holscher v. Erickson, supra. Although the Circuit Court's decision was brief and unpublished, the Court clearly agreed that Holscher's constitutional challenge to Minnesota's DNA specimen statute was properly dismissed on the merits.[5] That decision constitutes a binding precedent that must be followed here. Anastasoff, 223 F.3d at 905. Therefore, based on Holscher, (as well as Kruger and McBride), the Court concludes that Plaintiff's constitutional challenge to

---

[4] In Kruger v. Erickson, supra, Chief Magistrate Judge Franklin L. Noel reached the same conclusion:

> "[T]aking petitioner's blood pursuant to Minn.Stat. § 609.3461 did not violate the Ex Post Facto Clause. The Statute is not penal in nature. [Footnote omitted.] Its purpose is to create a DNA database for law enforcement purposes."

875 F.Supp. at 589.

Magistrate Judge Noel also rejected constitutional challenges to Minnesota's compulsory DNA specimen statute based on the Fourteenth Amendment, the Eighth Amendment, and the Fourth Amendment. Id. at 587-88.

[5] The Court of Appeals summary opinion reads as follows:

> "Glen R. Holscher appeals the district court's [footnote omitted] dismissal under Federal Rule of Civil Procedure 12(b)(6) of his 42 U.S.C. § 1983 claim alleging prison officials violated his rights under the Fourth, Fifth, Eighth, and Fourteenth Amendments and the Ex Post Facto Clause of the United States Constitution by drawing his blood for DNA analysis pursuant to Minnesota Statute § 609.3461 (1992), for a DNA bank. Having carefully reviewed the record and the parties' briefs, we conclude the district court correctly found that Holscher can prove no set fo facts which would entitle him to relief. We thus affirm the district court. See 8th Cir. R. 47B."

Minn.Stat. § 609.117 does not present a legally cognizable claim.

## III. CONCLUSION

For the reasons discussed above, this action must be dismissed pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim on which relief can be granted. It follows that Plaintiff's application for leave to proceed IFP must also be denied. See 28 U.S.C. § 1915(e)(2)(B)(ii). Notwithstanding the dismissal of this action, Plaintiff shall remain liable for the unpaid balance of the $150 filing fee.[6] He has not paid any part of the filing fee, so he will still owe the full $150. Prison officials will have to deduct that amount from his prison trust account and pay it to the Clerk of Court in the manner prescribed by 28 U.S.C. § 1915(b)(2). Finally, the dismissal of this action shall count as a "strike" against Plaintiff for purposes of 28 U.S.C. § 1915(g).

## IV. RECOMMENDATION

Based upon the above, and upon all the files, records, and proceedings herein,

---

[6] Under the PLRA, prisoners may be excused from pre-paying the full amount of the applicable filing fee before filing an action. However, 28 U.S.C. § 1915(b) clearly states that prisoners "shall be required to pay the full amount of the filing fee." In other words, prisoners are permitted to file actions without paying the full filing fee in advance, but they still remain liable for the fee. Ashley v. Dilworth, 147 F.3d 715, 716 (8th Cir. 1998) ("[t]he purpose of the [PLRA] was to require all prisoner-litigants to pay filing fees in full, with the only issue being whether the inmate pays the entire filing fee at the initiation of the proceeding or in installments over a period of time"). Nothing in the PLRA suggests that the dismissal of a prisoner's action would extinguish the ultimate obligation to pay the filing fee. See In re Tyler, 110 F.3d 528, 529-30 (8th Cir. 1997) ("the PLRA makes prisoners responsible for their filing fees the moment the prisoner brings a civil action or files an appeal").

**IT IS RECOMMENDED** that:

1. Plaintiff's "Application to Proceed Without Prepayment of Fees" (Docket No. 2) be **DENIED**;

2. The action be **SUMMARILY DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1);

3. Plaintiff be required to pay the unpaid balance of the Court filing fee, namely the full $150, in accordance with 28 U.S.C. § 1915(b)(2); and

4. For purposes of 28 U.S.C. § 1915(g), this action be dismissed "on the grounds that it is frivolous, malicious, or fails to state a claim on which relief may be granted."

Dated: November 16, 2000

JOHN M. MASON
United States Magistrate Judge

Pursuant to Local Rule 72.1(c)(2), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties on or before December 1, 2000, written objections which specifically identify the portions of the Report to which objections are made and the bases for each objection.

This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable directly to the Circuit Court of Appeals.

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
FOURTH DIVISION

Civil File No. 4-93-18

Glen R. Holscher,

Plaintiff,

v.

**REPORT AND RECOMMENDATION**

Orville B. Pung, individually and in his official capacity as Commissioner of Minnesota Dept. of Corrections; Robert A. Erickson, individually and in his official capacity as Warden, Minnesota Correctional Facility, Stillwater

Defendants.

---

Plaintiff appeared pro se.

Catherine E. Avina, Special Assistant Attorney General, appeared on behalf of Defendants.

---

JONATHAN LEBEDOFF, United States Magistrate Judge

The above-entitled matter is before the undersigned Magistrate Judge of District Court on Plaintiff Glen R. Holscher's action in which he alleges violations of his constitutional rights under Title 42, United States Code, Section 1983. The Matter has been referred to the undersigned United States Magistrate Judge for Report and Recommendation pursuant to 28 U.S.C. 636 and Local Rule 72.1 (c). Plaintiff specifically alleges that he was forced to give a blood sample for DNA analysis in violation of his rights under the Fifth, Eighth and Fourteenth Amendments to the United States Constitution and the Ex Post Facto Clause. Plaintiff seeks

SEP 2 3 1993
FILED
FRANCIS E. DOSAL, CLERK
JUDGMENT ENTERED
DEPUTY CLERK'S INITIALS

(1)

ATTACHMENT 1

declaratory judgment and compensatory and punitive damages.

Defendants have filed a Motion to Dismiss plaintiff's Complaint on the basis that the Complaint fails to state a claim against the defendants upon which relief can be granted.

Plaintiff has submitted a "Motion to Oppose Defendant's Motion to Dismiss" and a memorandum in support of that "Motion", asserting that issues of material fact exist which preclude dismissal.

For the reasons set forth below, the Court finds that plaintiff's Complaint fails to state a claim on which relief can be granted, and the Court will recommend that the Complaint be dismissed.

I. **FACTS**

Plaintiff Glen R. Holscher is an inmate incarcerated at the Minnesota Correctional Facility - Stillwater. Defendant Orville B. Pung is the Commissioner of the Minnesota Department of Corrections. Defendant Robert A. Erickson is the Warden of the Stillwater Correctional Facility. On March 10, 1987, Plaintiff was convicted in state court of kidnapping and criminal sexual conduct. Plaintiff's Complaint at para. 5. He is now an inmate at the Stillwater Correctional Facility. Id. at para. 2.

On October 31, 1990, Plaintiff was called to the prison health center and given a direct order to consent to give a blood sample for the purpose of DNA analysis. Id. at para. 8. If Plaintiff had refused to give the specimen, he would have been

subject to disciplinary charges that could have resulted in loss of privileges, placement in segregation, and loss of good time. Id. at para. 9. Although Plaintiff refused to sign the consent form, he did give the sample. Id. at para. 11.

Plaintiff claims that forcing him to give a blood sample constituted cruel and unusual punishment and denied him due process and equal protection of the law. He also claims that Minn. Stat. § 609. 3461 is an ex post facto law and forces him to be a witness against himself. Id. at paras. 14-15.

Deoxyribonucleic acid (DNA) is a complex molecule which is found in the nuclei of human cells and carries a person's genetic information. A molecule of DNA is comprised of two nucleotide strands coiled around each other and connected by rungs, like a twisted ladder. The strands and rungs link thousands of small components which exist is a number of biochemical variations. These components are arranged differently for every individual except for identical twins. Jones v. Murray, 962 F.2d 302, 303 (4th Cir. 1992). DNA analysis is the process by which DNA in a human biological specimen is analyzed and compared with DNA from another human biological specimen for identification purposes. Minn. Stat. § 299C.155, subd. 1 (1992).

In 1989 the Minnesota legislature created a DNA data bank. When a person is either convicted of criminal sexual conduct or sentenced as a patterned sex offender, the court must order the person to provide a biological specimen for the purpose of DNA analysis. Further, if a person who is committed to the custody of

the Commissioner of Corrections and who has been so convicted or so sentenced has not provided a specimen for purposes of DNA analysis, the Commissioner of Corrections must order the person to provide a specimen before completion of the person's term of imprisonment. Minn. Stat. § 609.3461 (1992).

The specimens collected either by court order or by order of the Commissioner of Corrections are forwarded to the Minnesota Bureau of Criminal Apprehension. Id. The Bureau has established a centralized system to cross-reference data obtained from DNA analysis. The Bureau performs DNA analysis and makes the data obtained available to law enforcement officials in connection with criminal investigations in which human biological specimens have been recovered. The data is also available to prosecutors and defendants in subsequent criminal prosecutions. Minn. Stat. § 299C.155, subds. 3 and 4. (1992).

**II. DISCUSSION**

Defendants move pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss plaintiff's Complaint. Upon a motion to dismiss for failure to state a claim, all factual allegations in the Complaint must be taken as true and construed favorably to the plaintiff. La Bounty v. Adler, 933 F.2d 121, 123 (2nd Cir. 1991). Dismissal for failure to state a claim is proper if it appears beyond a doubt that the plaintiff can prove no set of facts in support of his or her claim that would entitle him or her to the relief requested. Greenberg v. Boettcher & Co., 755 F. Supp. 776, 780 (N.D. Ill. 1991).

In the present case, all of plaintiff's factual allegations will be taken as true. As noted above, he was ordered to consent to a blood sample and he did in fact give a sample. Defendants assert that dismissal is nonetheless proper because plaintiff can prove no set of facts in support of his claim that would entitle him to relief.

Plaintiff claims that Minn. Stat. § 609.3461 is an ex post facto law as applied to him because it was enacted subsequent to his conviction. Complaint at para. 6. The Court finds that Minn. Stat. § 609.3461 is not a penal statute and therefore cannot be ex post facto. Moreover, it does not impose a greater punishment on plaintiff than his court of conviction imposed.

The United States Constitution prohibits the states from passing ex post facto laws. U.S. Const. art. 1, § 10, cl. 1. The Ex Post Facto Clause serves both to curtail legislative abuses and to give fair warning of criminal laws and their punishments. Weaver v. Graham, 450 U.S. 24, 29, 101 S. Ct. 960, 964 (1981).

The prohibition against ex post facto laws applies only to penal statutes which disadvantage the offender affected by them. Collins v. Youngblood, 497 U.S. 37,__. A statute violates the ex post facto prohibition if it punishes as a crime an act previously committed which was innocent when done, if it makes more burdensome the punishment for a crime after it was committed, or if it deprives one charged with a crime of any defense available at the time the act was committed. Id. at __. (citing Beazell v. Ohio, 269 U.S. 167, 169-170, (1925)).

There is only one case which can be found which addresses the question of

whether a statute creating a DNA data bank violates the ex post facto prohibition when applied to inmates convicted before the statute's enactment. See Jones v. Murray, 962 F.2d 302 (4th Cir. 1992). In Jones, the Fourth Circuit considered a Virginia statute which, like Minnesota's, provides that felons incarcerated on the date of the statute's enactment shall provide a blood sample for DNA analysis. Id. at 304. Six inmates challenged the implementation of the program in a Section 1983 action. They claimed in part that the retroactive imposition of the blood test requirement as a condition of release violated the Constitution's Ex Post Facto Clause. Id. at 305.

The Fourth Circuit Court of Appeals held that because the statute at issue was not penal in nature, the DNA testing itself did not run afoul of the Ex Post Facto Clause. Id. at 309. The Court did find unconstitutional a part of the Virginia statute that allowed prison administrators to hold a refusing prisoner beyond the time of his mandatory parole. Id. at 310. Minnesota's Section 609.3461 has no such provision.

The Jones court also found that the Ex Post Facto Clause does not prevent prison administrators from disciplining a prisoner who refuses to provide a specimen. The Court noted as follows:

> It is precisely because reasonable prison regulations, and subsequent punishment for infractions thereof, are contemplated as part of the sentence of every prisoner, that they do not constitute additional punishment and are not classified as ex post facto. Moreover, since a prisoner's original sentence does not embrace a right to one set of regulations over another, reasonable amendments, too, fall within the anticipated sentence of every inmate. We therefore conclude that neither Virginia's blood testing requirement, itself, nor the infliction of punishment within the terms of the prisoners' original sentence for a violation of the requirement, is ex post facto.

962 F.2d at 309-310.

In the present case, Minn. Stat. § 609.3461 is also not penal in nature. It is an administrative statute creating a system for collecting and disseminating DNA data. It is not punitive, just as the collecting of fingerprints is not punitive. Like collecting fingerprints, DNA analysis functions to create a data base for the solving of present and future crimes.

Nor does Minn. Stat. § 609.3461 constitute a retroactive increase in plaintiff's sentence. Plaintiff can only be incarcerated for the term of imprisonment handed down by the trial court that convicted him. Although Plaintiff's refusal to give a specimen would subject him to the possibility of losing privileges and good time and being placed in segregation, his refusal would not increase his original sentence. The in-prison sanctions for refusal are merely the sorts of punishments for infractions of prison regulations contemplated as part of the sentence of every prisoner. They do not therefore represent an impermissible ex post facto increase in sentence.

In conclusion, Minn. Stat. 609.3461 does not violate the Ex Post Facto Clause. The Court finds that plaintiff's Complaint should therefore be dismissed as to this claim.

Plaintiff also claims that forcing him to give a blood sample constituted cruel and unusual punishment. Complaint at para. 15. As the following will show, requiring an inmate to have a blood test does not rise to the level of cruel and unusual punishment and there is no allegation that the prison personnel who administered the test acted with deliberate indifference.

The Eighth Amendment imposes limits on the conditions in which a state may confine those convicted of a crime. Rhodes v. Chapman, 452 U.S. 337, 344-45, (1981). It prohibits punishments which involve the unnecessary and wanton infliction of pain or which are grossly disproportionate to the severity of the crime. Id. at 346.

Eighth Amendment prison claims have both an objective and a subjective component. The objective component concerns whether the deprivation at issue is sufficiently serious. The subjective component concerns whether the prison officials acted with a sufficiently culpable state of mind. Wilson v. Seiter, _ U.S. _, 111 S. Ct. 2321, 2324 (1991). In the present case consideration of both components shows that ordering Holscher to provide a blood sample and taking the sample did not constitute cruel and unusual punishment.

First, no static test exists by which courts determine whether conditions of confinement are cruel and unusual. The Eighth Amendment draws its meaning from the evolving standards of decency that mark the progress of a maturing society. Rhodes, 452 U.S. at 346, 101 S. Ct. 2399. Here, under any objective standard, Plaintiff's claim cannot be viewed as serious enough to constitute cruel and unusual punishment.

Nowhere in the record is there evidence that the defendants' conduct with respect to plaintiff resulted in pain without penological purpose. Nor did defendants' conduct result in unquestioned and serious deprivations of basic human needs. Cf. Rhodes, 452 U.S. at 347. Blood tests are commonplace. The procedure involves virtually no risk, trauma, or pain. Cf. Jones, 962 F.2d at 307 (blood testing can be reasonable under the Fourth Amendment, even with respect to free persons, where the slight intrusion is outweighed by the

governmental interest advanced by the intrusion). Thus requiring plaintiff to submit to a blood test does not rise to cruel and unusual punishment.

Second, analysis of the subjective component requires an inquiry into the prison official's state of mind. Wilson, 111 S. Ct. at 2324. The officials must have acted with deliberate indifference. Id. at 2327. There is no allegation in plaintiff's Complaint that the defendants acted with deliberate indifference either in ordering him to consent to a blood test or in administering it.

In conclusion, plaintiff's blood test involved neither the serious deprivation of basic human needs nor the infliction of pain without penological purpose so as to constitute cruel and unusual punishment. Moreover, there is no allegation that the prison personnel who administered the test acted with deliberate indifference. The Court finds that this claim should therefore be dismissed.

Plaintiff next claims that taking a blood sample from him for DNA analysis compelled him to be a witness against himself in violation of the Fifth Amendment. Complaint at para. 14.

The Fifth Amendment's privilege against self-incrimination is applicable to the states through the Fourteenth Amendment. Malloy v. Hoizan, 378 U.S. 1, 8, (1964). The protection of the privilege reaches an accused's communications, whatever form they might take. It also protects against the compulsion of responses which are also communications, for example, compliance with a subpoena to produce one's papers. Schmerber v. State of California, 384 U.S. 757, 763-64, (1966).

The Fifth Amendment privilege offers no protection against compulsion to submit to fingerprinting, photographing, or measurement, to write or speak for identification, to appear in court, to stand, to assume a stance, to walk or to make a particular gesture. Id. As the Schmerber Court noted:

> The distinction which has emerged, often expressed in different ways, is that the privilege is a bar against compelling "communications" or "testimony," but that compulsion which makes a suspect or accused the source of "real or physical evidence" does not violate it.

Id.

In Schmerber, the Court held that the withdrawal of blood and use of the analysis for alcohol content in a criminal prosecution did not involve compulsion to testify. Id. at 761. Like the blood test in Schmerber, the DNA analyses here did not involve even a shadow of either testimonial compulsion or enforced communication by plaintiff. Plaintiff's testimonial capacities were in no way implicated. Through DNA analysis plaintiff was simply made the source of physical evidence. That evidence will either implicate him or rule him out as a suspect in future investigations of sex offenses. It is thus analogous to fingerprinting, photographing or measuring.

In conclusion, the privilege against self-incrimination only bars compelling an accused to testify against himself or otherwise provide evidence of a communicative nature. The taking of a blood sample and its subsequent DNA analysis did not involve compulsion of that nature.

The Court finds that plaintiff's claim that taking a

blood sample for DNA analysis compelled him to testify against himself should therefore be dismissed.

Plaintiff also claims that having his blood taken for DNA analysis denied him equal protection of the law. Complaint at para. 15. The Court finds that the disparate treatment of inmates convicted of criminal sexual conduct is rationally related to legitimate governmental interests.

Equal protection of the law requires that all people similarly situated be treated alike, "absent a legitimate government interest expressed in a rational manner." Cleburne v. Cleburne Living Center, 473 U.S. 432, 439 (1985). Prisoners do not surrender their rights to equal protection at the prison gate. However, unequal treatment among inmates is justified if it bears a rational relation to legitimate penal interests. Williams v. Lane, 851 F.2d 867, 881 (7th Cir. 1988), cert. denied, 109 S. Ct. 879 (1989). Thus, there is no equal protection violation when the government treats dissimilar groups of inmates in a disparate manner. Timm v. Gunter 917 F.2d 1093, 1103 (8th Cir. 1990), cert. denied, 111 S. Ct. 2807 (1991) (differences in gender, types of crimes committed and number and age of inmates at different state penal institutions justified differences in security measures taken at those institutions).

In the present case, only those inmates who have been convicted of criminal sexual conduct or sentenced as a patterned sex offender are required to provide a biological specimen for DNA analysis. Minn. Stat. § 609.3461, subd. 2 (1992). While it is

true that those inmates are subject to disparate treatment, the disparate treatment is rationally related to the legitimate governmental interest of creating a data bank which will aid in the investigation of future crimes involving criminal sexual conduct.

The legislature could target criminal sexual conduct as a crime where recidivism is a particular problem. Obtaining DNA analyses from those presently convicted of criminal sexual conduct will thus create a data bank that is likely to identify a significant number of future offenders. At the same time, the data bank may have some deterrent effect because of the ease with which suspects can be identified.

In conclusion, treating sex offenders differently with respect to DNA analysis clearly serves legitimate governmental interests. Minn. Stat. § 609.3461, Subd. 2 (1992) bears a rational relationship to those interests. Therefore the Court finds that plaintiff has not been denied equal protection of the law, and this claim should be dismissed.

Finally, plaintiff claims that ordering him to provide a blood sample denied him due process. Complaint at paras. 13 and 15.

The Court finds no authority for the proposition that plaintiff must be given some opportunity to contest the order to give a blood sample before the sample is actually given. As noted above, refusing to obey the order would subject plaintiff to disciplinary charges. Before any penalty could be imposed plaintiff would have the right to notice and a hearing under the

procedures mandated in Inmate 24394 v. Schoen, 363 F. Supp. 683 (D. Minn. 1973). The Court finds that this is all the due process that is required under the circumstances. However, since plaintiff ultimately provided a blood sample and received no penalty for refusal, the issue of due process is not ripe for decision in this forum. As such, plaintiff's due process claim should be dismissed.

Based on the foregoing authorities, arguments, and all the files, records and proceedings herein,

**IT IS HEREBY RECOMMENDED** that:

1) Defendants' motion to dismiss the Complaint with prejudice be GRANTED.

Dated: September 28, 1993.

JONATHAN LEBEDOFF
United States Magistrate Judge

Pursuant to Local Rule 72.1(c)(2), any party may object to this report and recommendation by filing with the Clerk of Court and serving all parties, within ten days after being served with a copy thereof, written objections which specifically identify the portions of the proposed findings, recommendations or report to which objection is being made, and a brief in support thereof. A party may respond to the objecting party's brief within ten days after service thereof. All briefs filed under this rule shall be limited to ten pages. A judge shall make a de novo determination of those portions to which objection is made.

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
FOURTH DIVISION

Glen R. Holscher,

Plaintiff,

Civ. No. 4-93-18

v.

Orville B. Pung, individually and in his official capacity as Commissioner of Minnesota Dept. of Corrections, Robert A. Erickson, individually and in his official capacity as Warden, Minnesota Correctional Facility, Stillwater,

Defendants.

MEMORANDUM OPINION AND ORDER

---

This is a 42 U.S.C. § 1983 action. Plaintiff alleges he was forced to give a blood sample for DNA analysis in violation of his rights under the Fifth, Eighth and Fourteenth Amendments to the United States Constitution and the Ex Post Facto Clause. Plaintiff seeks a declaratory judgment and compensatory and punitive damages. Pursuant to Rule 12(b) of the Rules of Civil Procedure, defendants have filed a motion to dismiss plaintiff's complaint for failure to state a claim for which relief may be granted.

On September 28, 1993 United States Magistrate Judge Jonathan Lebedoff issued a report and recommendation which recommended that defendants' motion be granted. Plaintiff filed timely objections to the report and recommendation in which he argues that the Magistrate Judge misinterpreted the applicable law and failed to take into account plaintiff's deeply held fear of needles. The court has therefore conducted a de novo review of these matters and the whole record.



NOV 1 0 1993
FILED
FRANCIS E. DOSAL, CLERK
JUDGEMENT ENTERED NOV 1 0 1993
DEPUTY CLERK'S INITIALS

(9)

ATTACHMENT B

I.

Plaintiff is an inmate incarcerated in the Minnesota Correctional Facility at Stillwater. He was convicted in state court of kidnapping and criminal sexual conduct in March, 1987. Defendant Pung is the Commissioner of the Minnesota Department of Corrections; defendant Erickson is the warden of the Stillwater facility.

In 1989 the Minnesota legislature created a DNA data bank. When a defendant is convicted of criminal sexual conduct or sentenced as a patterned sex offender, the court must order the defendant to provide a biological specimen for the purpose of DNA analysis. Minn. Stat. § 609.3461 (1992). If a defendant so convicted is already in the custody of the commissioner of corrections and has not provided a specimen, the commissioner must order the defendant to provide a specimen before defendant's term of imprisonment expires. Id.

Specimens are forwarded to the Minnesota Bureau of Criminal Apprehension, which performs DNA analysis and provides the resulting data to law enforcement officials in criminal investigations in which biological specimens have been discovered. Id. The data is available to prosecutors and defendants in subsequent criminal prosecutions. Minn. Stat. § 299C.155, subds. 3 and 4 (1992).

On October 31, 1990, plaintiff was given a direct order to consent to give a blood sample for DNA analysis. Refusal to obey the order would have resulted in disciplinary charges and possible

loss of privileges, placement in segregation and loss of good time. Plaintiff gave the sample, but refused to sign the consent form. He then brought this action.

II.

In a motion to dismiss for failure to state a claim, all factual allegations in the complaint must be taken as true and inferences drawn from them must be construed in the plaintiff's favor. La Bounty v. Adler, 933 F.2d 121, 123 (2d Cir. 1991). Dismissal is appropriate if it appears beyond a doubt that plaintiff can prove no set of facts in support of plaintiff's claim that would entitle plaintiff to the relief requested. Greenberg v. Boettcher & Co., 755 F.Supp. 776, 780 (N.D. Ill. 1991).

Plaintiff first argues that Minn. Stat. § 609.3461 is an ex post facto law as applied to him because it was enacted after his conviction. A statute violates the ex post facto prohibition if it: (1) punishes as a crime an act that was not subject to criminal sanctions when committed; (2) makes the punishment more burdensome for a crime previously committed; or (3) deprives a defendant of a defense available at the time the act was committed. Collins v. Youngblood, 497 U.S. 37, 110 S. Ct. 2715, 2719 (1990). A statute that is not penal in nature cannot violate the ex post facto clause. Jones v. Murray, 962 F.2d 302, 309 (4th Cir. 1992)

Only one case has addressed the issue of whether a statute creating a DNA blood bank violates the ex post facto clause when applied to inmates incarcerated before the statute's enactment.

See Id. The Jones court considered a Virginia statute requiring already-incarcerated felons to provide blood samples for DNA analysis. The Fourth Circuit Court of Appeals held that the statute at issue was not penal and therefore did not violate the ex post facto clause. Id. at 309.

After careful consideration, the court adopts the reasoning of the Fourth Circuit Court of Appeals. Like the Jones court, this court finds that requiring prisoners to provide blood samples "is not punitive in nature" and consequently cannot be a violation of the ex post facto clause. Id. at 309. Nor is it unconstitutional for a prisoner to be disciplined if he fails to follow a direct order to provide a blood sample. "[R]easonable prison regulations, and subsequent punishment for infractions thereof, are contemplated as part of the sentence of every prisoner" and do not constitute additional punishment under the ex post facto clause. Id. Accordingly, Minn. Stat. § 609.3461 does not violate the ex post facto prohibition.

The Jones court did hold unconstitutional a part of the Virginia statute that allowed prison administrators to hold a prisoner who refused to provide a sample beyond the time of his mandatory parole. Id at 310. Plaintiff argues that Minn. Stat. § 609.3461 likewise is unconstitutional because it may increase an inmate's sentence. In support of this argument plaintiff points out that a prisoner who refuses to obey a direct order to provide

a sample may lose good time.[1]

Plaintiff's argument is unconvincing. Unlike Virginia's statute, Minn. Stat. § 609.3261 does not authorize prison officials to detain a prisoner beyond his mandatory parole date. A prisoner can only be incarcerated for the term of imprisonment handed down by the trial court that convicted him. Loss of good time does not extend a prisoner's sentence beyond that originally imposed. Refusal to comply with a direct order to provide a blood sample could result only in a prisoner serving his entire sentence. Loss of good time for disobeying a direct order to provide a blood sample is therefore not an unconstitutional ex post facto punishment.

Plaintiff also asserts that requiring him to give blood constituted cruel and unusual punishment in violation of the Eighth Amendment. The Eighth Amendment prohibits punishments that involve unnecessary and wanton infliction of pain or that are grossly disproportionate to the severity of the crime. Rhodes v. Chapman, 452 U.S. 337, 346 (1981). Eighth Amendment prison claims have a subjective and an objective component. The subjective component requires the court to examine whether prison officials acted deliberately and wantonly. Wilson v. Seiter, ___ U.S. ___, 111 S. Ct. 2321, 2324 (1991). The objective component requires the court

---

[1] Plaintiff also appears to argue that inmates in Minnesota correctional facilities do not receive good time. This is incorrect. Under Minnesota law, an inmate's sentence may be reduced "by one day for each two days during which the inmate violates none of the disciplinary rules promulgated by the commissioner." Minn. Stat. § 244.04.

to determine whether the deprivation at issue is sufficiently serious. Id.

After thorough examination of the record, the court finds that plaintiff has failed to state a claim under the Eighth Amendment. Plaintiff asserts that traumatic childhood events left him with a deep seated fear of needles, and the blood test traumatized him. Accepting plaintiff's assertions as true, these facts are not sufficient to make out a prima facie claim. Nowhere in the record is there evidence that defendants inflicted pain upon plaintiff without any penological purpose. Their conduct did not result in unquestioned and serious deprivation of basic human needs. As the Jones court noted, blood testing involves "virtually no risk, trauma or pain." Jones, 962 F.2d at 307. The fact that this commonplace procedure was personally traumatic to plaintiff does not establish a constitutional violation. Furthermore, plaintiff does not appear to argue, nor does the record suggest, that defendants acted wantonly. Plaintiff has failed to satisfy both elements of the test for Eighth Amendment prison claims.

Plaintiff also asserts a claim under the Fifth Amendment, arguing that requiring him to provide a blood sample violated his privilege against self incrimination. Plaintiff has failed to state a claim for which relief can be granted. The Fifth Amendment provides a privilege against compelled communication to testimony. "[C]ompulsion which make a suspect or accused the source of 'real or physical evidence' does not violate it." Schmerber v. California, 384 U.S. 757, 761 (1966)(holding that withdrawal of

blood and use of blood analysis for alcohol content in a criminal prosecution does not violate the privilege against self incrimination). Schmerber is applicable to the instant facts. Like the blood withdrawal and alcohol analysis at issue in that case, blood withdrawal and subsequent DNA analysis is not compelled self incrimination under the Fifth Amendment.

Plaintiff claims also that the statute unconstitutionally violates his Fourteenth Amendment right to equal protection under the law. Plaintiff argues that the statute unconstitutionally discriminates because only inmates who have been convicted of criminal sexual conduct or sentenced as patterned sex offenders are required to provide specimens for DNA analysis. Defendants argue that this differential treatment is rationally related to the legitimate government interest in creating a data bank that will aid in future sex offense investigations.

Unequal treatment among inmates is justified if it bears a rational relation to legitimate penal interests. Williams v. Lane, 851 F.2d 867, 881 (7th Cir. 1988), cert. denied, 109 S. Ct. 879 (1989). There is no violation where the government treats dissimilar groups of inmates in a disparate manner. Timm v. Gunter, 917 F.2d 1093, 1103 (8th Cir. 1990), cert. denied, 111 S. Ct. 2807 (1991).

Under Minn. Stat. § 609.3461, those prisoners convicted of criminal sexual conduct and those sentenced as pattered sex offenders are treated disparately. This disparate treatment is rationally related to the government's asserted interest in

creating a DNA data bank to assist in investigating criminal sexual offenses. Accordingly, Minn. Stat. § 609.3461 does not deny plaintiff equal protection of the law.

Plaintiff's final claim is that requiring him to provide a blood sample denied him due process. Plaintiff has produced no cases, and the court has been unable to locate any authority for the proposition that plaintiff must be given an opportunity to contest a direct order to give a blood sample before the sample is actually given.[2] The court agrees with the conclusion of the Magistrate Judge that this issue is not ripe for consideration because plaintiff produced a blood sample and received no penalty for refusal.

After careful review of the record the court finds itself in basic agreement with the conclusions of Magistrate Judge Lebedoff. Plaintiff's claims should be dismissed in their entirety.

---

[2] Under the rule established in Inmate 24394 v. Schoen, 363 F.Supp. 683 (D. Minn. 1973), plaintiff has the right to notice and a hearing before plaintiff can be disciplined for disciplinary infractions.

**ORDER**

Accordingly, based upon the above, and all the files, records, and proceedings herein, IT IS HEREBY ORDERED that the claims of the plaintiff are dismissed in their entirety.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Date: November 9, 1993.

Diana E. Murphy
Chief Judge