**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

OLIVER J. BRANCH,

Plaintiff,

v.

MINNESOTA DEPARTMENT OF CORRECTIONS;
Warden LOU STENDER;
Case Manager HARRIET MARETTE;
Discipline Supervisor DIANA LIND;
Sgt. PAUL SCHNIEDER; and
Hearing Officer JOHN KUESEL,

Defendants.

Civil No. 00-2415 (JRT/JMM)

**MEMORANDUM OPINION AND ORDER ADOPTING THE REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE**

---

Plaintiff Oliver J. Branch, a Minnesota prison inmate, has commenced this action seeking relief pursuant to 42 U.S.C. § 1983. This matter is now before the Court on plaintiff's objections to the Report and Recommendation ("R&R") of United States Magistrate Judge John M. Mason dated November 16, 2000. Plaintiff objects to the recommendation of the Magistrate Judge that Minn. Stat. § 609.117 does not violate the United States Constitution, that prison officials did not violate plaintiff's constitutional rights in their efforts to enforce this statute, and that plaintiff's § 1983 claim should be dismissed pursuant to 28 U.S.C. § 1915A.

FILED SEP 06 2001
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD. SEP 06 2001
DEPUTY CLERK

The Court has conducted a de novo review of plaintiff's objections pursuant to 28 U.S.C. § 636(b)(1)(C) and D. Minn. L.R. 72.1(c)(2). For the reasons set forth below, the Court overrules plaintiff's objections and adopts the R&R of the Magistrate Judge.

**BACKGROUND**

Plaintiff was sentenced to prison in 1989 after being convicted of second degree murder and was incarcerated at the Minnesota Correctional Facility in Moose Lake, Minnesota ("MCF-ML"). On August 14, 2000, defendant Harriet Marrette, a case manager at MCF-ML, directed plaintiff to sign a consent form so that a blood sample could be taken from him. The blood sample was sought pursuant to Minn. Stat. § 690.117, subd. 2, which requires the Minnesota Commissioner of Corrections to obtain "a biological specimen for the purpose of DNA analysis" from prisoners who have been convicted of certain crimes, including second degree murder.[1]

Plaintiff refused to sign the consent form or to give a blood sample. He was then charged with violating prison disciplinary rules for "disobeying a direct order." A hearing on the matter was conducted by defendants Diana Lind, Paul Schnieder, and John Kuesel. Plaintiff was found guilty of violating prison disciplinary rules, and as a result spent 45 days in segregated confinement and forfeited seven days of good time credit.

[1] The statute was amended effective July 1, 2000. At that time, the statute was renumbered from § 609.3461 to its present number, § 609.117. The amendment also expanded the list of crimes that are covered by the DNA specimen requirement. Before the statute was amended, it applied only to sex crimes. After the amendment, it also applied to other violent crimes, including second degree murder.

Plaintiff has attempted to bring suit against defendants Marette, Lind, Schneider, and Kuesel for violating his federal constitutional rights pursuant to 42 U.S.C. § 1983. He has also attempted to sue the Warden at MCF-ML, Lou Stender, for failing to properly supervise the other defendants and for failing to rectify their alleged misconduct. Plaintiff is seeking an order from the Court that would prevent defendants from enforcing the DNA specimen statute. He also seeks restoration of his lost good time credit as well as monetary damages to compensate him for the alleged constitutional violations.

## DISCUSSION

As noted by the Magistrate Judge, plaintiff's pleading is subject to preliminary screening pursuant to 28 U.S.C. § 1915A, which requires federal courts to screen the pleadings in every civil action brought by a prisoner against governmental entities and/or employees. The Court must determine which aspects of the pleading, if any, are actionable and should be allowed to proceed. If the pleading fails to state a legally cognizable claim, the action must be dismissed. *Id.* at §1915A(b)(1).

In his R&R, the Magistrate Judge explained that it was not clear whether plaintiff is alleging that the DNA specimen statute is unconstitutional or whether he is alleging that he was disciplined by prison officials without due process when he refused to sign the DNA consent form. The Magistrate Judge concluded, however, that neither claim was viable and recommended that the action be dismissed in its entirety pursuant to § 1915A(b).

Plaintiff makes six objections to the R&R, essentially reiterating the arguments in his Complaint, challenging the constitutionality of the statute. The Court will attempt to address each of plaintiff's objections below. To the extent the Court does not specifically address an objection made by plaintiff, the Court believes that the objection has no basis in law and is therefore overruled. The Court agrees with the legal analysis of the Magistrate Judge, overrules plaintiff's objections, and adopts the R&R.

## I. Basis for the DNA Sample

Plaintiff's primary objection to the R&R is his belief that the blood sample was sought pursuant to Minn. Stat. § 609.3461, which applies only to convicted sex offenders.[2] Plaintiff argues that prison officials knew he was not a convicted sex offender, but continued to knowingly seek his consent for a blood sample thereby violating his rights. The Court does not agree.

Plaintiff is mistaken in his understanding of the prison officials' basis for seeking a blood sample. Plaintiff is correct in asserting that Minn. Stat. § 609.3461 applied only to convicted sex offenders. However, Minn. Stat. § 609.3461 was amended and renumbered by the Minnesota Legislature in 1999, with the changes becoming effective July 1, 2000. Minn. Stat. § 609.117, Historical and Statutory Notes. The effect of the amendment was to expand the list of crimes covered by the DNA specimen statute to

[2] Four of plaintiff's six objections refer to this argument.

include other violent crimes, one of which is second degree murder.[3] The statute not only allows prison officials to collect a DNA specimen, but requires them to do so. At the time the prison officials sought plaintiff's consent for a blood sample, in August 2000, they were acting in accordance with Minn. Stat. § 609.117.[4] There was nothing improper or illegal about the conduct of the prison officials in seeking the blood sample. Accordingly, plaintiff's objections on this issue are overruled.

## II. Due Process Challenge

In his objections, plaintiff also appears to reiterate his constitutional challenges to the procedures by which prison officials attempted to secure his consent for the blood sample. The Court reads plaintiff's objections as a due process challenge.

Under the Due Process clause of the Fourteenth Amendment, a state cannot deprive a person of a constitutionally protected liberty or property interest without notice

---

[3] The relevant portion of the statute reads:

> The commissioner of corrections or local corrections authority shall order a person to provide a biological specimen for the purpose of DNA analysis before completion of the person's term of imprisonment when the person has not provided a biological specimen for the purpose of DNA analysis and the person:
>
> > (1) was convicted of violation or attempting to violate any of the following or initially charged with violating one of the following sections and convicted of another offense arising out of the same set of circumstances:
> >
> > > (i) murder under section 609.185, 609.19, or 609.195 . . . .

Minn. Stat § 609.177.

[4] The fact that the consent forms at the prison may not have yet reflected the legislative amendment, and may have stated that the basis for the blood sample was Minn. Stat. § 609.3461,

(Footnote continued on next page.)

and a hearing. *See. e.g., Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985) ("[a]n essential principle of due process is that a deprivation of life, liberty, or property 'be preceded by notice and an opportunity for a hearing.' (citation omitted.)"). In this case, the requirements of due process were satisfied because prison officials provided plaintiff with appropriate notice and a hearing.

**A. Constitutionally Protected Interest**

A due process violation can only result if plaintiff demonstrates the existence of a constitutionally protected liberty interest. A constitutionally protected liberty interest will be found only when a prisoner has shown "atypical and significant hardship . . . in relation to the ordinary incidents of prison life." *Sandin v. O'Conner*, 515 U.S. 472, 484 (1995). The only potential liberty interests at stake in this case are plaintiff's interest in remaining in the general prison population, as opposed to segregated confinement, and his interest in retaining previously earned good time credits.

**1. Segregated Confinement**

Plaintiff was given 45 days of segregated confinement for violating prison disciplinary rules after he failed to sign the consent form and to submit to a blood sample. The Eighth Circuit has previously found that periods of segregated confinement much longer than 45 days do not constitute atypical and unusual hardship that give rise to a

(Footnote continued.)
does not change the fact that the prison officials were authorized to seek the sample pursuant to Minn. Stat. § 609.117.

constitutionally protected liberty interest. *See, e.g., Driscoll v. Youngman*, 95-4037, 1997 WL 581072, at *2 (8th Cir. Sept. 22, 1997) (holding that 135 days in disciplinary and administrative segregation would not support a due process claim). Given these previous decisions of the Eighth Circuit, the Court agrees with the Magistrate Judge that plaintiff does not have a protected liberty interest that could give rise to a due process violation with respect to his segregated confinement.

### 2. Good Time Credit

The Eighth Circuit has held on a number of occasions that a prisoner cannot seek restoration of good time credits in a § 1983 action. *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973); *Henson v. Brownlee*, 00-3788, 2001 WL 121987, at *1 (8th Cir. Feb. 13, 2001); *Stone v. Norris*, 00-2531, 2000 WL 1129578, at *1 (8th Cir. Aug. 10, 2000). The proper challenge to the length of a sentence, including the restoration of good time credits, is through a habeas corpus petition.[5] As a result, a due process challenge on this basis is premature.

### B. Notice and Hearing

In any event, plaintiff has received adequate notice and hearing in this case so that he was not deprived of any liberty interest. The Supreme Court has explained that,

---

[5] For the same reason, the Court rejects plaintiff's objections that his refusal to submit to a blood sample results in a retroactive increase in his sentence. There is no indication that plaintiff's sentence has been increased and furthermore, any complaint premised on this ground must be brought in a habeas petition.

"where a prison disciplinary hearing may result in the loss of good time credits . . . the inmate must receive: (1) advance written notice of the disciplinary charges; (2) an opportunity . . . to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action." *Walpole v. Hill*, 472 U.S. 445, 454 (1985). The record before the Court clearly indicates that plaintiff was afforded due process. He was given written notice of the charges against him, a formal hearing, an opportunity to appear at the hearing and present a defense, as well as a written explanation of the outcome of the proceedings. Because plaintiff was afforded adequate due process for the deprivation of his earned good time credit, he does not have a valid Fourteenth Amendment claim.

## III. Constitutionality of the DNA Specimen Requirement

In his objections, plaintiff also appears to reiterate his challenge to the constitutionality of the statute itself. Those objections are also overruled. As explained by the Magistrate Judge, Minnesota's DNA specimen statute has already been challenged on Fourth, Fifth, Eighth, and Fourteenth Amendment grounds as well as under the ex post facto clause.[6] The Eighth Circuit has previously upheld the constitutionality of Minn. Stat. § 609.3461, the predecessor to Minn. Stat. § 609.117. *Kruger v. Erickson*, 77 F.3d 1071 (8th Cir. 1996); *Hoschler v. Erickson*, 34 F.3d 1070 (8th Cir. 1994); *see also State v. McBride*, C7-98-1374, 1999 WL 185175 (Minn. Ct. App. April 6, 1999). Plaintiff has

---

[6] Plaintiff also challenges the statute on Sixth Amendment grounds. The Court sees no legitimate basis for such a challenge that has not previously been addressed by other courts.

not raised any new or novel legal arguments that would call into doubt the constitutionality of Minn. Stat. § 609.117.

## CONCLUSION

For the reasons discussed above, this action must be dismissed pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim on which relief can be granted. Plaintiff's application for leave to proceed IFP is also therefore denied. *See* 28 U.S.C. § 1915(e)(2)(B)(ii). Notwithstanding the dismissal of this action, plaintiff shall remain liable for the unpaid balance of the $150 filing fee.[7] Prison officials are directed to deduct that amount from plaintiff's prison trust account and pay it to the Clerk of Court in the manner proscribed by 28 U.S.C. § 1915(b)(2). Finally, the dismissal of this action shall count as a "strike" against plaintiff for purposes of 28 U.S.C. § 1915(g).

## ORDER

Based on the foregoing, the submissions of the parties, and all of the files, records, and proceedings herein, the Court **OVERRULES** plaintiff's objections [Docket No. 4], and **ADOPTS** the Report and Recommendation of the Magistrate Judge [Docket No. 3]. Accordingly, **IT IS HEREBY ORDERED** that:

---

[7] Under the PLRA, prisoners are permitted to file actions without paying the full filing fee in advance, but they still remain liable for the fee. 28 U.S.C. § 1915(b); *Ashley v. Dilworth*, 147 F.3d 715, 716 (8th Cir. 1998). Nothing in the PLRA suggests that the dismissal of a prisoner's action would extinguish the ultimate obligation to pay the filing fee. *In re Tyler*, 110 F.3d 528, 529-30 (8th Cir. 1997) ("the PLRA makes prisoners responsible for their filing fees the moment the prisoner brings a civil action or files an appeal").

1. Plaintiff's Application to Proceed Without Prepayment of Fees [Docket No. 2] is **DENIED**.

2. The action is **DISMISSED WITH PREJUDICE** pursuant to 28 U.S.C. § 1915A(b)(1).

3. Plaintiff is required to pay the unpaid balance of the Court filing fee in accordance with 28 U.S.C. § 1915(b)(2). Prison officials are **DIRECTED** to deduct that amount from plaintiff's prison trust account and pay it to the Clerk of Court in the manner proscribed by 28 U.S.C. § 1915(b)(2).

4. For purposes of 28 U.S.C. § 1915(g), this action is dismissed "on the grounds that it is frivolous, malicious, or fails to state a claim on which relief may be granted."

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED: Sept. 6, 2001
at Minneapolis, Minnesota.

JOHN R. TUNHEIM
United States District Judge

# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

## CIVIL NOTICE

**DATE MAILED TO COUNSEL/PRO SE PARTIES:** September 6, 2001

The purpose of this notice is to summarize the time limits for filing with the District Court Clerk's Office a Notice of Appeal to the Eighth Circuit Court of Appeals from a final decision of the District Court in a civil case.

> ***This is a summary only. For specific information on the time limits for filing a Notice of Appeal, review the applicable federal civil and appellate procedure rules and statutes.***

Rule 4(a) of the Federal Rules of Appellate Procedure (Fed. R. App. P.) requires that a Notice of Appeal be filed within:

1. Thirty days (60 days if the United States is a party) after the date of "entry of the judgment or order appealed from;" or

2. Thirty days (60 days if the United States is a party) after the date of entry of an order denying a timely motion for a new trial under Fed. R. Civ. P. 59; or

3. Thirty days (60 days if the United States is a party) after the date of entry of an order granting or denying a timely motion for judgment under Fed. R. Civ. P. 50(b), to amend or make additional findings of fact under Fed. R. Civ. P. 52(b), and/or to alter or amend the judgment under Fed. R. Civ. P. 59; or

4. Fourteen days after the date on which a previously timely Notice of Appeal was filed.

If a Notice of Appeal is not timely filed, a party in a civil case can move the District Court pursuant to Fed. R. App. P. 4(a)(5) to extend the time for filing a Notice of Appeal. This motion must be filed no later than 30 days after the period for filing a Notice of Appeal expires. If the motion is filed after the period for filing a Notice of Appeal expires, the party bringing the motion must give the opposing parties notice of it. The District Court may grant the motion, but only if excusable neglect or good cause is shown for failing to file a timely Notice of Appeal.